**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSEPH CARLISI, | ) |
| | ) |
| | ) CASE NO.: 09-CV-7424 |
| | ) |
| Plaintiff, | ) Judge Robert M. Dow, Jr. |
| | ) |
| v. | ) |
| | ) |
| METROPOLITAN WATER RECLAMATION | ) |
| DISTRICT OF GREATER CHICAGO, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion [16] filed by the Metropolitan Water Reclamation District of Greater Chicago ("Defendant" or the "District") to dismiss Plaintiff Joseph Carlisi's complaint [1] pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's motion is granted and Plaintiff's complaint is dismissed with prejudice.

**I.   Background**[1]

Plaintiff's one-count complaint alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended 29 U.S.C. Sec. 621, *et seq*.

Plaintiff began working at the Metropolitan Water Reclamation District in July of 1987. ¶ 7. On or about March 8, 2007, one of Plaintiff's co-workers (Matthew McHugh) told Plaintiff's supervisor (Tom Ryan) that Plaintiff had committed a sexual battery against him in the workplace during work hours. ¶ 9. The following day, Plaintiff was suspended pending investigation of the charges. ¶ 11. Plaintiff alleges that Defendant failed to investigate the

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaints. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Unless otherwise specified, all citations in this section correspond to Plaintiff's complaint [1].

charges in a fair, unbiased, and professional manner; among other things, Plaintiff contends that Defendant failed to obtain an independent medical examination of McHugh to substantiate his claims. ¶¶ 13-15, 17.

On March 17, 2007, McHugh was granted disability on the basis of his claimed inability to return to work due to psychological damage caused him by Plaintiff. ¶ 16. McHugh eventually spent nearly five months on "duty disability," which entitled him to generous benefits over and above what an employee on "regular" disability would receive. ¶¶ 20, 27.

On April 2, 2007, McHugh filed a report with the Metropolitan Water Reclamation District of Greater Chicago Police Department, alleging that Plaintiff had battered him and identifying a co-worker, Kevin Kane, as a witness to the event. ¶ 18. On April 7, the District Police Department charged Plaintiff with misdemeanor battery. ¶ 19.

Shortly thereafter, Plaintiff was placed on a 30-day suspension, effective April 25, 2007, to be followed by termination from employment effective May 25, 2007. ¶ 23. Facing suspension and certain termination, Plaintiff submitted his resignation on or about April 24, 2007, in order to avoid the complete loss of his pension. ¶ 24. Plaintiff alleges that his resignation was in fact a "constructive termination" and constituted an adverse employment action within the meaning of the ADEA. ¶ 25. At the time of his resignation, Plaintiff was 61 years old; Plaintiff had planned to work until age 65. ¶ 39. Plaintiff's duties were taken over by employees of the District who were all significantly younger than him. ¶ 26.

On October 15, 2007, Plaintiff's bench trial on the battery charges commenced in the Circuit Court of Cook County. ¶ 28. The Circuit Court found Plaintiff not guilty at the close of the presentation of the prosecution's evidence. *Id*. The court based its decision on a "complete lack of credibility" of the complaining witnesses. ¶ 29.

Plaintiff alleges that the District police department's charges were (1) fabricated, (2) poorly investigated, (3) tainted with the self-interest of McHugh (who was permitted to absent himself from work for nearly five months while receiving generous benefits), and (4) used to unlawfully force Plaintiff to resign from his job just weeks before he would have been entitled to an increased pension for having worked for the District for 20 years. ¶¶ 30, 33. Plaintiff alleges that the District "adopted, furthered and employed the false charges of Matthew McHugh as a means to force Plaintiff to retire before reaching twenty years service." ¶ 42. Although Plaintiff was exonerated, he claims to have suffered great physical harm, including a heart attack three months after the trial. ¶ 34.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 6, 2008. ¶ 6. The EEOC issued Plaintiff a Notice of Right to Sue on September 2, 2009. This lawsuit was filed on November 30, 2009. *Id*.

## II. Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*,

550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). However, "if the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir.2002) (citations omitted). "In other words, if a plaintiff pleads facts which show he has no claim, then he has pled himself out of court." *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir.2006) (citation omitted).

**III. Analysis**

In Illinois, an employee may sue under the ADEA only if he files a charge of discrimination with the EEOC within 300 days of the alleged "unlawful employment practice." Defendant contends that Plaintiff's complaint is subject to dismissal because Plaintiff filed his EEOC charge on August 6, 2008, 471 days after his "constructive termination" from the District, on April 24, 2007. *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 637 (7th Cir. 2004) (citing *Hamilton v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir.1992)); 29 U.S.C.A. § 626(d)(2).[2] In his response, Plaintiff argues that while he was subjected to

---

[2] The 300 day time limit imposed on an ADEA plaintiff "operate[s] akin to [a] statute of limitation, rather than as a jurisdictional requirement [ ]." *Delgado v. Certified Grocers Midwest, Inc.*, 2006 WL 2873215, at *2 (N.D. Ill. Oct.5, 2006) (citing *Rennie v. Garrett*, 896 F.2d 1057, 1062 (7th Cir. 1990); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). In general, a statute of limitations defense is an affirmative defense that is not susceptible to disposition on a Rule 12(b)(6) motion to dismiss. However, "a statute of limitations defense [raised in a motion to dismiss] is appropriate where, [as here,] 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Adonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)) see also *Owens v. City of Chicago*, 2009 WL 2778079, at *5 (Aug. 31,

4

"constructive termination" from his position on April 24, 2007, "Defendant's series of discriminatory acts against the Plaintiff" did not end until he was exonerated by the Circuit Court, on October 15, 2007,[3] a date just within the 300-day charging period. Pl. Resp. at 3-4. Plaintiff argues that the District's flawed investigation, Plaintiff's forced resignation, and the District's post-termination "perpetrat[ion of] the false charges against Plaintiff * * * through its Police Department" was in fact one "continuing violation" that did not end until the Cook County Circuit Court's verdict "unmasked" the Defendant's acts as "patently discriminatory." Pl. Resp. at 4. Only then did Plaintiff realize he was the "victim of discrimination, as opposed simply to the false charges of a co-worker." *Id.*

Again, in Illinois, an employee may sue under the ADEA only if he files a charge of discrimination with the EEOC within 300 days of the alleged "unlawful employment practice." *Flannery*, 354 F.3d at 637. Determining when this filing period begins to run "requires [courts] to identify precisely the 'unlawful employment practice'" of which the plaintiff complains. *Hamilton*, 964 F.2d at 603 (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980)). The ADEA explains in great detail the sorts of actions that qualify as "unlawful employment practices" and includes among such practices numerous discrete acts. 29 USCA § 623(a) ("It shall be unlawful for an employer * * * (1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age * * *"); see also *National R.R.. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-111 (2002) (discussing analogous Title VII provision).

---

2009). Plaintiff does not argue that Defendant's "statute of limitations" defense may not be considered in this motion to dismiss.

[3] Plaintiff's response brief mistakenly identifies the date of the Circuit Court's verdict as *September* 15, 2007.

However, the "continuing violation doctrine" is an exception to the requirement of adherence with the 300-day charging period. The doctrine "allow[s] a court to consider acts that occurred outside of the limitations period if 'related closely enough' to the acts occurring within the established time frame 'to be considered one ongoing violation.'" *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121 n. 6 (7th Cir. 2009) (quoting *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 395-96 (7th Cir.1999)). The Seventh Circuit has recently described the doctrine as somewhat of a misnomer because "[d]espite its name, it is a doctrine about cumulative rather than continuing violation." *Lewis v. City of Chicago*, 528 F.3d 488, 493 (7th Cir. 2008) rev'd on other grounds by 130 S.Ct. 2191 (2010); see also *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). In *Lewis*, the Seventh Circuit explained that the "doctrine of continuing violation allows you to delay suing until a series of acts by a prospective defendant blossoms into a wrongful injury on which a suit can be based." *Id.* ("A typical case is workplace harassment on grounds of sex. The first instance of a coworker's offensive words or actions may be too trivial to amount to actionable harassment, but if they continue they may eventually amount to an actionable pattern of harassing behavior. And then the entire series is actionable."); see also *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004) ("The doctrine applies to claims like sexual harassment * * * [because] [i]n those cases, duration and repetition are necessary to convert merely offensive behavior into an actionable change in the plaintiff's working conditions"). "To succeed under a continuing violation theory, [the plaintiff] must demonstrate that the acts of alleged discrimination are part of an ongoing pattern of discrimination and that at least one of the alleged discrete acts of discrimination occurred within the relevant limitations period." *Hamilton v. Komatsu Dresser Industries, Inc.*, 964 F.2d 600, 604 (7th Cir. 1992) (citing *Stewart v. CPC Intern., Inc.*, 679 F.2d

117, 121 (7th Cir.1982) ("At least one discriminatory act must have occurred within the charge-filing period.")).

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court explained when a plaintiff may rely on the continuing violation doctrine to recover for discriminatory acts that fall outside the 300-day limitations period. The doctrine operates differently according to the type of discriminatory act alleged—(1) "discrete" discriminatory acts or (2) acts contributing to a hostile work environment. *Morgan*, 536 U.S. at 114-15. With respect to the first category—"discrete" acts—each act "starts a new clock for filing charges," and the clock starts on the date that the act "occurred." *Id*. at 113. Any discrete discriminatory acts that fall outside the statute of limitations are time-barred even though they may relate to other discrete acts that fall within the statute of limitations. *See id*. at 112-13; see also *id*. at 114 ("The Court of Appeals applied the continuing violations doctrine to what it termed "serial violations," holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability. With respect to this holding, therefore, we reverse.") (internal citation omitted). Timely filed discrete acts cannot save discrete acts that are related but not timely filed. *See id*. at 112 ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."). The Court provided further guidance with respect to application of the continuing violation doctrine by giving specific examples of discrete acts "such as termination, failure to promote, denial of transfer, or refusal to hire." *Id*. at 114. The Court noted that these acts "are easy to identify" because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id*.

As noted above, the Court in *Morgan* distinguished "discrete" acts from a second category of acts, those contributing to a hostile work environment. The Court explained that the "very nature" of hostile work environment claims involves "repeated conduct" that "may not be actionable on its own." *Id*. at 115. Rather, "[s]uch claims are based on the cumulative effect of individual acts." *Id*. In contrast to discrete acts of discrimination,

> [i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id*. at 117. The Court reasoned that the "incidents constituting a hostile work environment are part of one unlawful employment practice." *Morgan*, 536 U.S. at 118.

It should be clear from the discussion of the above case law that the continuing violation doctrine is not available to Plaintiff in this case. Here, the "unlawful employment practice" of which the Plaintiff complains was his constructive termination from the District. Cmplt. at ¶ 25. The face of the complaint clearly shows that this event took place more than 300 days before Plaintiff filed his EEOC charge. Plaintiff's constructive termination was a discrete discriminatory act. *Id*. at 114; see also *Shirani v. U.S. Dept. of Labor*, 187 Fed. Appx. 631, *3 (7th Cir. 2006) ("being fired * * * is a single, significant event, not a continuing act"). While Plaintiff's termination did not fall within the 300-day period, certain actions by the District Police department did. To wit, within the 300-day period, the District (through its police department) worked to ensure that McHugh's false criminal charges against Plaintiff were brought to trial. Plaintiff essentially argues that because these actions are related to and part of the same scheme as his unlawful forced resignation, the continuing violation doctrine applies and

the entire series of actions is actionable. The Supreme Court in *Morgan* specifically rejected any such understanding of the continuing violations doctrine.[4]

Neither Plaintiff's complaint nor his response to Defendant's motion to dismiss argues that Plaintiff was subjected to a "hostile work environment." However, assuming Plaintiff had intended to raise such a theory, his complaint would still be time-barred. In order to take advantage of the continuing violation doctrine when making a hostile work environment claim, a plaintiff is required to identify "an act contributing to the claim occur[ing] within the filing period." *Morgan*, 536 U.S. at 118. Each of the acts Plaintiff has identified that fall within the filing period occurred *after* Plaintiff had left employment with the District. The Court fails to see how an act taken by an employer *after* the employee has been terminated could contribute to a hostile work environment for that employee.

The Court must address one last argument. In his response, Plaintiff suggests that his claim is timely because, while he immediately knew he had been fired, Plaintiff did not know of the discriminatory character of his termination until after the Circuit Court's verdict. This argument clearly is foreclosed by controlling precedent. *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) ("The 300-day limit *** begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured, not when she determines that the injury was unlawful.") (citations and internal quotations omitted).

---

[4] Plaintiff has not argued (nor could he) that the District's participation in the criminal prosecution of Plaintiff after Plaintiff was terminated itself constituted a discrete discriminatory and unlawful employment practice. While, in some circumstances post-termination retaliation by an employer can be actionable, see *e.g. Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 885 (7th Cir. 1996), neither Plaintiff nor the Court's own research has identified a case finding an employer's conduct *after* an employee has left the employer to be actionable employment discrimination.

Because Plaintiff's complaint shows that he failed to comply with the 300-day time limit for filing his charge with the EEOC, dismissal is appropriate.[5] In reaching this conclusion, the Court is aware that in appropriate cases equitable doctrines such as equitable tolling and estoppel can excuse failures to comply with the time period for filing a charge. *Morgan*, 536 U.S. at 113-114. The doctrine of equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 561 (7th Cir.1996) (quoting *Singletary v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir.1993)). Such may be the case if the plaintiff is unable to determine who caused his injury, has received inadequate notice, or if the appointment of counsel is pending. *Donald*, 95 F.3d at 562 (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)). "[T]olling does not provide a plaintiff with an automatic extension of indefinite duration; the plaintiff must file his charge with the EEOC within a reasonable period of time." *Hentosh v. Herman M. Finch Univ.*, 167 F.3d 1170, 1175 (7th Cir. 1999). Estoppel is primarily intended to redress situations where the employer conceals the very fact of discrimination or otherwise tries to prevent the employee from bringing a lawsuit. *Pelnarsh v. R.R. Donnelly & Sons Co.*, 348 Fed. Appx. 178, 181 (7th Cir. 2009).

The theoretical availability of these doctrines need not give the Court pause in dismissing the complaint, since such equitable relief plainly would be unavailable to Plaintiff. Plaintiff was immediately aware of the circumstances of his forced resignation. There is no reason why Plaintiff could not have filed an EEOC charge at some point within the 300 days following this event. Although the deadline is short, a charging party is not required to conduct a precomplaint

---

[5] Because the suit is time-barred, the dismissal is with prejudice. See, *e.g. Conover v. Lein*, 87 F.3d 905, 908 (7th Cir. 1996) ("As the district court held that the Illinois statute of limitation had run and the Illinois savings provision did not apply, the dismissal should have been with prejudice").

investigation, as he would have to do if he were filing a suit. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir.1990). Furthermore, even if equitable tolling or estoppel would have given Plaintiff *some* additional time in which to file after he learned the verdict in his criminal trial (which it almost assuredly would not) Plaintiff waited an additional 295 days after being acquitted before filing his EEOC charge. Surely, waiting almost another entire charging period before filing would take this case outside the "reasonable period of time" contemplated under the pertinent case law. *Hentosh*, 167 F.3d at 1175. Additionally, it is worth noting that Plaintiff has not invoked either equitable doctrine in his response.

## IV. Conclusion

For the reasons set forth above, the Court grants Defendant's motion to dismiss Plaintiff's complaint [16]. Plaintiff's complaint is dismissed with prejudice.

Dated: November 8, 2010

_____
Robert M. Dow, Jr.
United States District Judge